IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARIA DEL CARMEN Y. MENDOZA and CARMINA M. VILLA d/b/a HAIRMASTERS, § § § § | | |
| Plaintiffs, § | | CIVIL ACTION NO. |
| v. § § | | SA-01-CA-0937 FB (NN) |
| REGIS CORPORATION, HAIRMASTERS 1 thru 8, and MASTERCUTS 1 and 2, § § § § | | |
| Defendants. § | | |

**MEMORANDUM AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To:** Honorable Fred Biery
United States District Judge

The matter before the Court is the determination of attorneys fees and costs incurred by plaintiffs in successfully litigating their motion for an order to show cause why defendants should not be held in contempt.

I held an evidentiary hearing on the motion and thereafter recommended that the District Court find defendants in civil contempt of an agreed order and permanent injunction. The District Court accepted that recommendation and ordered defendants to pay plaintiffs damages of $5,000. I also recommended that plaintiffs be awarded their attorneys fees and costs. That recommendation was accepted with the amount to be determined after further briefing.

**Procedural History**

Only a brief recitation of the procedural history of this case is necessary here.  Plaintiffs,

Maria Del Carmen Y. Mendoza and Carmina M. Villa, d/b/a Hairmasters, have operated a hair salon in San Antonio for thirty years. After plaintiffs discovered that defendants were operating hair salons in San Antonio using the name "Hairmasters," and unsuccessfully attempting to deal directly with local and regional personnel of Regis to resolve the matter, plaintiffs filed their complaint on October 15, 2001. Thereafter defendants agreed to a permanent injunction which "permanently enjoined [defendants] from using the mark Hairmasters" in Bexar County or the contiguous counties so long as plaintiff continued to use the Hairmasters mark. On motion of the parties the Court dismissed the case on April 5, 2002.

While defendants changed the name of their salons in San Antonio, it did not ensure that phone listings for those salons were changed in either the October 2002 or the November 2003 edition of the SBC phone directory. Plaintiff Carmina Villa became aware of the listings in July 2004 and her attorney contacted counsel for defendants immediately. Nevertheless, the Regis salons were again listed under "Hairmasters" in the November 2004 edition of the directory, while plaintiffs' business white pages listing was deleted from the 2004 directory.

Plaintiffs filed their motion seeking a finding of contempt that same month. The Court ordered the parties to participate in mediation in January 2005, which was unsuccessful. Discovery proceeded, briefs were filed, and an evidentiary hearing was held on July 28 and 29, 2005. After hearing the evidence I recommended that defendants be found in contempt and damages awarded. The parties filed objections to the recommendation, and the District Court ultimately adopted the recommendation.

Briefing then began on the attorney fee issue, including the effect of a settlement offer defendants made in March 2005 prior to the evidentiary hearing. I rejected defendants'

characterization of that offer as a Rule 68 offer of judgment and the consequences such characterization would have on the attorney fee request now before the Court.  The fee request is supported by documentation including seven invoices and five affidavits or declarations of counsel.[1]

## I.  Attorneys' Fees

The Fifth Circuit uses the "lodestar method" to calculate attorneys' fees.[2]  The lodestar is computed by multiplying the number of hours reasonably expended by the prevailing hourly rate for similar work in the community.  The lodestar is then adjusted depending on the circumstances of the case and the respective weight of twelve factors set forth in **Johnson v. Georgia Highway Express, Inc.**[3] as applied to the case.

### Lodestar Calculation

Summary of Arguments:

Plaintiffs seek an award of $116,428.91 for fees and costs incurred in connection with this contempt proceeding.  Defendants argue that the hours claimed were not reasonably expended on the case.  Specifically, defendants urge the Court to find that plaintiffs' counsel failed to exercise "legal judgment" as evidenced by their spending so many hours when they should have known that monetary relief was limited and by their rejection of defendants' $50,000 settlement offer communicated to plaintiffs in March 2005.  Defendants also argue that plaintiffs

---

[1] Invoices are attached to docket entries 74, 94, and 102, and the affidavits or declarations attached to entries 58, 74, 94, 102, and 105.

[2] **Longden v. Sunderman**, 979 F.2d 1095,1099 (5th Cir. 1992).

[3] 488 F.2d 714, 717-10 (5th Cir. 1974).

failed to exercise "billing judgment" in submitting a claim for fees based on excessive numbers of hours. Defendants vigorously argue that plaintiffs' request for attorneys fees includes time spent on their unsuccessful attempt to obtain damages as measured by defendants' net worth or profits for the relevant time period, and that their ultimate recovery of a mere $5,000 necessitates a finding that the hours claimed were unreasonably expended. Plaintiffs' recent supplementation of their fee request explained that 38.5 hours of the claimed time was expended developing evidence of Regis' net worth and profits. Defendants respond that substantially more time was expended developing evidence regarding damages and that such time is not compensable.

Analysis:

Plaintiffs have the burden to demonstrate the reasonableness of the fees requested.[4] A component of such a showing is proof that plaintiffs exercised "billing judgment" in writing off unproductive, excessive or redundant hours.[5] In their response to my Order inviting supplementation of the fee request, in part to address the issue of billing judgment, plaintiffs argue that billing judgment is reflected in the delegation of work to attorneys with a lower billing rate and a discounting of that rate.[6] However, plaintiffs' affidavit fails to address the issues of excessive hours, redundant hours, and unproductive hours or acknowledge that any of the time billed was written off as falling into these established categories of hours unreasonably expended. While the Supreme Court has recognized that it is possible that all hours actually spent were

---

[4] **Walker v. HUD**, 99 F.3d 761, 770 (5th Cir. 1996).

[5] **Id**. at 769.

[6] Supplemental Affidavit (of Ted Lee) in Support of Attorney's Fees and Expenses, attached as Exh. A to Docket entry 105.

reasonably spent and affirmed a district court express finding to this effect,[7] I cannot make such a finding here. There is inadequate evidence that plaintiffs' counsel examined their invoices and omitted hours which were unproductive, or hours representing work which was redundant of other work performed in the case, or those hours which were excessive given the task.

Without evidence of billing judgment exercised by counsel, the court may either reduce the hours by a percentage or conduct a line-by-line analysis of the bill and reduce the total hours accordingly.[8] Here, plaintiffs submitted seven separate billing records representing the work of five attorneys, a law clerk and a paralegal in support of their fee request. A line by line review of these extensive records to ferret out those hours which were unreasonably expended is both impractical and impossible. Having reviewed authorities that similarly address the issue of reduction of hours for failure to exercise billing judgment,[9] and taking into account plaintiffs' decision to delegate the bulk of the work in the case to a less experienced attorney with a lower hourly fee, I recommend that a reduction in the hours claimed by 10 percent is appropriate.

Addressing defendants' position that plaintiffs expended substantially more time than the 38.5 hours identified in the most recent affidavit of lead counsel in developing their damages arguments, it is important to note that while the Court rejected plaintiffs' theory concerning the measure of damages (i.e., Regis' net worth or profits), the Court concluded that plaintiffs were nevertheless entitled to damages as supported by the evidence. Defendants vigorously resisted

---

[7] **City of Riverside v. Rivera**, 477 U.S. 561(1986).

[8] **Green v. Administrators of the Tulane Educ. Fund**, 284 F.3d 642, 662 (5th Cir. 2002).

[9] 2 Mary Frances Derfner & Arthur D. Wolf, **Court Ordered Attorneys Fees**, ¶ 16.02[5] at 16-50 (2007).

plaintiffs' claim of entitlement to damages and attempted to limit any recovery to pecuniary injuries only.  The Court ultimately rejected those positions.  Defendants' argument that any and all time spent on any aspect of the damages issue is similarly unpersuasive.  Plaintiffs are entitled to fees for those hours expended to establish entitlement to damages. Plaintiffs' representation that 38.5 hours were expended developing their claim for damages based on Regis' net profits is reasonable.

Defendants make much of the fact that the Court awarded plaintiffs a mere $5000 after finding defendants in civil contempt.  Defendants argue that plaintiffs' rejection of the $50,000 settlement offer evidences their unrealistic demands in this case, further reflected in the excessive hours spent for which they now seek reimbursement.  Neither of these arguments support the severe reduction of the fee award which defendants urge.  The settlement offer was communicated in late March 2005 when plaintiffs' attorneys had already expended over 100 hours on the contempt issue.[10]  Plaintiffs' rejection of the offer – which was inclusive of attorneys fees and expenses as well as damages and which did not include an agreement by Regis regarding its future conduct with respect to the use of the Hairmasters name or acknowledgment of wrongdoing – was not so unjustified and does not reflect such unrealistic expectations so as to further reduce the fees now sought, beyond the exclusion of those hours spent pursuing a theory of damages and evidence of same which the Court ultimately rejected.

With respect to the hourly rates claimed, defendants voice no objection to the reasonableness of those rates for the various attorneys.  Reasonable hourly rates are determined

---

[10]The total fees and costs incurred prior to the March 2005 settlement offer was $27,621.62.  Docket entry 89, page 2.

by reference to the prevailing market rates in the relevant legal community for similar services by attorneys of comparable skills, experience and reputation.[11] In the absence of objection and considering the supporting materials presented by plaintiffs I recommend that the District Court find the hourly rates of plaintiffs' attorneys reasonable.

Plaintiffs' invoices attached to docket entries 74, 94 and 102, reduced by the 38.5 hours discussed above, total $93,294.50.[12] A 10 percent reduction for the omission of billing judgment results in a lodestar amount of $83,965.05.

Revisions to Lodestar – Application of **Johnson** Factors

After determining the lodestar amount, the Court must consider whether that amount should be adjusted. The lodestar amount is presumed reasonable, but may be adjusted up or down based on what are known as the **Johnson** factors, which include (1) the time and labor required to litigate the matter; (2) the novelty and complexity of the issues, (3) the skill required to properly litigate the issues; (4) whether the attorney had to refuse other work to litigate the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or case imposed time constraints; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) whether the case was "undesirable"; (11) the type of attorney-client relationship and whether the relationship was long-standing; and (12)

---

[11] **Blum v. Stenson**, 465 U.S. 886, 895 (1984)

[12] This amount is calculated by subtracting the particular time entries which plaintiffs have identified in docket entry 105 as attributable to their unsuccessful damages argument (hours times hourly rate for each particular attorney), from the total fees listed in the August 2, 2005 invoice (attached to docket entry 74), and adding that revised total of $74,757 to the fees itemized in the six other invoices which are attached to docket entries 74, 94 and 102.

7

awards made in similar cases.[13] An upward adjustment from the lodestar amount based on the **Johnson** factors is exceptional.[14] Additionally, where the **Johnson** factors are part of the lodestar analysis, they should not be reconsidered when determining adjustments to the lodestar amount.[15]

Defendants argue that application of the **Johnson** factors requires a downward adjustment of the lodestar because of the meager damages award obtained. As discussed above, the plaintiffs were successful insofar as the Court agreed that defendants violated the agreed injunction and found defendants in contempt of a prior order of the Court. Although the Court rejected plaintiffs theory of damages, it did not accept defendants' argument that damages were either unavailable or were only available to the extent injury was quantifiable. Furthermore the Court determined that plaintiffs were entitled to attorneys fees and costs incurred as a result of defendants' contempt. Accordingly, considering the plaintiffs' overall degree of success and achievement of significant compensable goals,[16] I do not recommend that this factor warrants a downward adjustment of the lodestar.

Defendants also urge the Court to reduce the lodestar amount after considering the time

---

[13]**Johnson v. Georgia Highway Express, Inc.**, 488 F.2d 714, 717-19 (5th Cir. 1974).

[14]**Watkins v. Fordice**, 7 F.3d 453, 457 (5th Cir. 1993).

[15]**Green v. Administrators of Tulane Educ. Fund**, 284 F.3d 642, 661 (5th Cir. 2002).

[16]**See Picou v. City of Jackson, Miss**., 91 Fed. Appx. 340, 342 (5th Cir. 2004) (where jury found defendant unlawfully discriminated against plaintiff but no compensatory damages awarded, court held that plaintiff nevertheless achieved an important compensable goal of deterring future employment discrimination and awarded plaintiff one-fourth of her $40,000 attorney fee request).

and labor required to litigate the matter, particularly in light of what defendants characterize as excessive conference time. Plaintiffs respond that because the primary work on this case was delegated from a senior partner to a younger associate – who billed his time at a lesser amount – more time was spent in conference and supervision than when a single attorney carries the case responsibilities. I have reviewed the records and recommend that the Court find that the time billed was not excessive, did not result in an unreasonable total fee, and does not require an adjustment under **Johnson.**

Plaintiffs ask the Court for an enhancement of the lodestar based on the novelty and complexity of the issues, including the vigorous advocacy of the defendants. The record supports plaintiffs' characterization of the issues in this contempt proceeding as novel, and the defendants' consistent commitment to zealous representation.[17] However, because this factor is adequately addressed in the lodestar analysis – reflected in the hours itemized in the seven invoices – it would be redundant to enhance the lodestar for this reason.

Plaintiffs also urge an upward adjustment of the lodestar because of the "undesirability" of the case, noting that it involved a small, single location, family-run hair salon against a national chain of salons represented by a national law firm with seemingly unlimited resources, and required a determination of whether the failure to correct phone directory listings was

---

[17]Docket entries 89 and 95 are especially illustrative of the aggressive litigation strategy which defendants pursued in this case. In those submissions defendants insisted that their March 2005 letter operated as a Rule 68 Offer of Judgment so as to cap plaintiffs' attorneys fees as of that date – even though the March 2005 letter made no reference to Rule 68 or otherwise tracked the very specific requirements of a Rule 68 offer. Defendants went on to ask for an award of their fees incurred after March 2005, and for a downward adjustment of plaintiffs' fee award to zero. Litigation positions such as these significantly increased the commitment of hours required to prosecute the contempt action.

actionable via a contempt proceeding.  Reminded that adjustment of the lodestar is warranted only in "exceptional" situations, I do not recommend that the imbalances between the plaintiffs and defendants, or the size of the firms representing each, or the nature of the dispute justifies an unward adjustment of the lodestar.

In summary, I have considered each of the twelve Johnson factors and particularly those which the parties argue justify upward or downward adjustment to the lodestar, but nevertheless recommend that none of the **Johnson** factors warrants an adjustment of the lodestar amount.

## II.  Costs

Defendants do not challenge the costs requested other than those expenses associated with development of the damages issues.  I recommend that those objections be rejected for the reasons discussed above.  Accordingly, I recommend that costs be assessed in the amount of $16,871.41 as documented in plaintiffs' invoices attached at docket entries 74, 94 and 102.

## Conclusion

For the reasons explained above, I recommend that the Court award plaintiffs fees in the amount of $83,965.05, plus costs in the amount of $16,871.41.

## Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this Memorandum and Recommendation on all parties who have entered an appearance, by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this Memorandum and Recommendation must be filed within 10 days after

being served with a copy of same, unless this time period is modified by the District Court.[18] **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.**  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the District Court.[19]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Memorandum and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[20]

    **SIGNED** on January 29, 2008.

*[signature: Nancy Stein Nowak]*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[18] 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

[19] **Thomas v. Arn**, 474 U.S. 140, 149-152 (1985); **Acuña v. Brown & Root, Inc.**, 200 F.3d 335, 340 (5th Cir. 2000).

[20] **Douglass v. United Servs. Auto. Ass'n**, 79 F.3d 1415, 1428-29 (5th Cir. 1996).